IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:12-CR-101 |
| v. | ) | |
| | ) | |
| BRAD BOLTON, | ) | (VARLAN / SHIRLEY) |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court the Defendant's Motion to Dismiss Indictment [Doc. 337], filed on July 23, 2013. The parties appeared before the undersigned on August 13, 2013, for a hearing on the motion. Assistant United States Attorney Tracy L. Stone appeared on behalf of the Government. The Defendant was present and was represented at that time by court-appointed counsel Attorney Norman D. McKellar. Counsel presented argument on the motion, and the Court took the matter under advisement.[1]

On September 10, 2013, the Defendant filed a *pro se* request [Doc. 358] to amend his Motion to Dismiss Indictment, stating that he had asked counsel to amend his motion but that counsel had refused. Mr. McKellar moved the Court to withdraw [Doc. 359] as counsel of record on the following day. On September 30, 3013, the Court held a hearing to review the attorney-client

---

[1] A transcript [Doc. 390] of this hearing was filed in the record on November 14, 2013.

1

relationship. The Court permitted [Doc. 369] Mr. McKellar to withdraw[2] and appointed Attorney Christopher Scott Irwin to represent the Defendant. At the Defendant's request, the Court continued the trial to January 21, 2014. The Court instructed Mr. Irwin to move to amend or supplement the Motion to Dismiss Indictment or to file a notice that no supplement was necessary by October 11, 2013. On October 8, Mr. Irwin moved [Doc. 372] to file the Defendant's *pro se* filing, unmodified, in the record. The Court granted [Doc. 374] this request, over the Government's objection [Doc. 373], and ordered the Government to file a response. On October 24, 2013, the Government responded [Doc. 383] that the Defendant's amended motion "fails to raise any material issues, facts, or arguments not already before the Court." Following these supplemental filings by the parties, the Court again took the Defendant's motion under advisement.

For the reasons stated herein, the Court finds no basis to dismiss the Indictment and recommends that the Defendant's motion be denied.

## I. POSITIONS OF THE PARTIES

The Defendant is charged [Docs. 3, 79-redacted] with conspiring to distribute and possess with intent to distribute crack cocaine from August 2010 to August 7, 2012 (Count One), distributing crack cocaine on May 5, 2011 (Count Twenty-One), and money laundering (Count Twenty-Three). The Defendant argues that his charges must be dismissed because two Roane County Sheriff's officers, Detectives Kristopher Mynatt and Jason Mynatt, had not filed the appropriate oath of office at the time they investigated his alleged involvement in the instant case. He argues that this

---

[2]The Court found an irreparable breakdown in trust and communication between the Defendant and Mr. McKellar.

unauthorized investigation constitutes police misconduct and violates his right to due process of law. He contends that dismissal of the counts against him is the appropriate remedy because the officers proceeded with the investigation while knowing that they had not taken the mandatory official oath, thereby committing "'serious and blatant prosecutorial misconduct[.]'" [Doc. 337, p.6 (quoting United States v. Stokes, 124 F.3d 39, 46 (D. Mass. 1997).] In his supplemental filing, the Defendant maintains that Roane County Sheriff Jack Stockton did not file his oath of office until September 1, 2010, and, thus, did not have authority to appoint either of the investigating officers to a federal drug task force at the time of their investigation of the Defendant.

The Government responds [Doc. 350] that Detective Kristopher Mynatt filed his oath of office in September 2006, before he participated in the investigation of the Defendant. It contends that Detective Jason Mynatt's role in the investigation was limited to supervising a controlled purchase of crack cocaine from the Defendant on May 5, 2011, and conducting some physical surveillance of the controlled purchases conducted by other officers. The Government contends that both Detectives Mynatt were sworn federal task force officers at the time of the instant investigation and were part of a larger investigation of the Defendant and his coconspirators. It argues that any administrative errors in relation to the filing of their oaths of office does not amount to outrageous conduct warranting the dismissal of the Indictment. Finally, it maintains that the Defendant's supplemental argument regarding Sheriff Stockton is of the same ilk as his original motion and should be denied for the same reasons.

## II. FACTUAL FINDINGS

Neither party presented any testimony at the August 16 hearing. The Defendant presented

3

the following exhibits [Doc. 337] to his motion: (1) the Oath of Deputy Sheriff of Jason Mynatt, dated June 1, 2012; (2) a Tennessee Bureau of Investigation Official Chemistry Report submitted to Jason Mynatt on September 8, 2011, regarding a "[r]ock-like substance" determined to be cocaine base and relating to the Defendant; and (3) a Deputy Sheriff's Bond and Oath of "Chris" Mynatt dated September 7, 2007. The Government has filed the affidavits of Detectives Kristopher Mynatt [Doc. 350-1, p.1-2] and Jason Mynatt [Doc. 350-2, p.1-2], as well as their Oaths of Office and Credential - Special Deputation for the Rocky Top Task Force [Doc. 350-1, pp. 4-7 (Kristopher Mynatt) and Doc. 350-2, pp.5-7 (Jason Mynatt), Kristopher Mynatt's Special Deputation Appointment Oath of Office as a Special Deputy United States Marshal [Doc. 350, p.8], and two training certificates for Jason Mynatt [Doc. 350-2, pp. 3-4]. Based upon these filings, the Court makes the following findings of fact.

Between 2011 and 2012, Roane County Detective Kristopher Lynn Mynatt participated in the joint FBI and DEA investigation of a cocaine trafficking conspiracy, which led to the Indictment in which the Defendant is charged. At that time, Detective KristopherMynatt was a deputized and sworn FBI Task Force Officer and had previously filed[3] an Oath of Office as a Deputy Sheriff of Roane County, Tennessee.

On May 5, 2011, Roane County Detective Kelly Jason Mynatt supervised a controlled purchase of crack cocaine from the Defendant, which led to the Defendant's charge in Count Twenty-One of the Indictment. At that time, Detective Jason Mynatt was a deputized and sworn

---

[3]Although Kristopher Mynatt's Oath is dated September 7, 2007, he states in his affidavit that he believes this date to be a clerical error. He states that he believes he took his oath of office within days of joining the Roane County Sheriff's Office as a detective on September 1, 2006. It is unnecessary for the Court to determine whether Detective Mynatt filed his aath in 2006 or 2007, because both occurred well before the instant investigation.

4

FBI Task Force Officer. Investigator Kelly Jackson of the Kingston Police Department also supervised the controlled purchase.

### III. ANALYSIS

The Court begins with the basic constitutional requirement that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury[.]" U.S. Const. amend. V. "[A] trial may be held in a serious federal criminal case only if a grand jury has first intervened" and issued an indictment or presentment. Russell v. United States, 369 U.S. 749, 760-61 (1962). Legally insufficient indictments implicate not only the right to a grand jury's determination of probable cause to believe that the offense occurred but also the Fifth Amendment's guarantee of due process of law and protection against being twice placed in jeopardy for the same offense. Hamling v. United States, 418 U.S. 87, 177 (1974); Russell, 369 U.S. at 761. Also relevant is the Sixth Amendment's provision that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and the cause of the accusations[.]" U.S. Const. amend. VI; Russell, 369 U.S. at 761. "The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling, 418 U.S. at 117; United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting Hamling).

In the instant case, the Defendant does not challenge the substance of the Indictment or argue

5

that he did not have notice of the charges against him. Instead, he contends that the underlying investigation, which led to his charges, violated his right to Due Process because two of the investigating officers had not filed the required oath of office that authorized them to conduct the investigation. The Court finds that the Defendant's right to Due Process of law was not violated, both as a matter of fact and as a matter of law.

### A. The Officers Were Authorized to Investigate Drug Trafficking Crimes

The Tennessee Constitution requires that

> [e]very person who shall be chosen or appointed to any office of trust or profit under this Constitution or any law made in pursuance thereof, shall, before entering on the duties thereof, take an oath to support the Constitution of this State, and of the United States, and an oath of office.

Tenn. Const. Art. X, §1. Public officers in Tennessee must swear the following oath: "'I do solemnly swear that I will perform with fidelity the duties of the office to which I have been appointed . . . and which I am about to assume.'"[4] Tenn. Code Ann. § 8-18-111. Tennessee law

---

[4] In addition to the oath required for public officers in § 8-18-111, Tennessee sheriffs shall

> take an oath that the sheriff has not promised or given, nor will give, any fee, gift, gratuity, or reward for the office or for aid in procuring such office, that the sheriff will not take any fee, gift, or bribe, or gratuity for returning any person as a juror or for making any false return of any process, and that the sheriff will faithfully execute the office of sheriff to the best of such sheriff's knowledge and ability agreeably to law.

Tenn. Code Ann. § 8-8-104. The Defendant suggests that this language is also required for sheriff's deputies but cites only to the Tennessee Sheriff's Department Handbook for his contention that "deputy sheriff's oaths are incredibly similar in language to those of sheriffs." [Doc. 337, p.3] The Court finds the Defendant has failed to demonstrate that Tennessee law requires this language for deputies.

states that

> [w]henever any officer is authorized or required to appoint a deputy, such deputy, *before proceeding to act*, shall take the constitutional oaths and oath of office, which shall be accompanied by the same certificate, filed in the same office, and with the same endorsement, as the oaths of such deputy's principal. The provisions of this section do not apply to deputies who may be employed in particular cases only.

Tenn. Code Ann. § 8-18-112 (emphasis added). Section 8-18-107 provides in pertinent part that "[s]uch oaths shall be written out and subscribed by the person taking them, and shall be accompanied with the certificate of the officer administering the oaths, specifying the day and year when taken." Officers, "whose general duties are confined to a single county," must file their oaths of office and accompanying certificate in the county clerk's office. Tenn. Code Ann. § 8-18-109(a).

In the instant case, the Court finds that Detective Kristopher Mynatt had complied with the above constitutional and statutory requirements at all times that he participated in the investigation of the Defendant. According to the exhibits filed by the parties, Officer Kristopher Mynatt swore and filed the following oath when he became a Roane County deputy:

> I do solemnly swear that I will faithfully execute the duties of the office of Deputy Sheriff for Roane County, Tennessee, to the best of my ability agreeable to law. And I further swear that I have not given or promised any fee, gift, reward, or gratuity for returning any man as Juror, or for making any false return of any process. And I further swear that I will support the Constitution of the State of Tennessee and the Constitution of the United States. So help me God.

The Defendant argues that KristopherMynatt's oath was not proper because it did not contain the explicit language prohibiting him from accepting future fees, gifts, bribes, or gratuities. The Defendant cites to the Tennessee Sheriff's Department Handbook and a statute requiring a specific,

7

additional oath for Tennessee sheriffs (see footnote 2). The Court finds that the Defendant has failed to show that Detective Kristopher Mynatt's oath does not comply with the constitutional and statutory requirements of the state of Tennessee.[5]

With regard to Detective Jason Mynatt, it does not appear that he swore or filed an oath of office at the time he rejoined the Roane County Sheriff's Department in 2007. However, the Court finds his failure to swear or file the oath of office has no bearing upon the validity of a controlled purchase of drugs made by a confidential informant and under the supervision of other law enforcement officers. The Tennessee Supreme Court has observed that the official acts of a properly appointed deputy, who has not taken the required oath of office, are valid as to third parties. Farmers & Merchants Bank v. Chester, 25 Tenn. 458, 1846 WL 1452, *14 (1846)(examining the signing of a deed of trust by a deputy county clerk); see also United State v. O'Neal, 2013 WL 1089876, *2-3 (E.D. Tenn. Mar. 15, 2013) (holding that the failure of Roane County officers investigating the defendant's drug trafficking crimes to file the required oaths of office does not make the evidence gathered by these officers illegal).

---

[5]In his amendment to his motion, the Defendant also contends that Kristopher Mynatt's oath of office is deficient because it was sworn by Bibbie Tipton, who is a deputy clerk, rather than by someone authorized under Tennessee law. Tennessee Code Annotated section 8-18-109(b) provides in pertinent part that "[n]otwithstanding any other law to the contrary, the county mayor, the county clerk, judges of courts of general sessions, or a judge of any court of record in the county may administer the oath of office for any elected or appointed official." Tennessee law gives county clerks "the authority to . . . [a]ppoint deputies with full power to transact all the business of the clerk[.]" Tenn. Code Ann. § 18-1-108(a)(4). Construing this language, the Tennessee Supreme Court has held that the "power to appoint a deputy necessarily involves the idea that he shall act in the place of and for the regular clerk, and exercise the same powers; the acts of the deputy being the acts of the principal clerk by his lawfully appointed agent." Wilkerson v. Dennison, 80 S.W. 765, 766 (Tenn. 1904) (internal citation omitted). Accordingly, the Court finds that the Defendant has not shown that swearing an oath of office to a deputy clerk is a deficiency.

8

Moreover, at the time he supervised the instant controlled purchase, Detective Jason Mynatt was a sworn FBI Task Force Officer. The oath for a task force officer includes a promise to support and defend the United State Constitution and to perform the duties of task force officer faithfully. The Court finds as a matter of fact that Detective Jason Mynatt was authorized as a federal task force officer to supervise a controlled purchase of drugs from the Defendant as a part of the overall drug trafficking investigation.

In his amendment to his motion, the Defendant argues that the Detectives' certifications as task force officers were invalid because they were assigned to those positions by Roane County Sheriff Jack Stockton, who at the time of such appointments, had not filed the required oath of office himself. First, the Defendant has failed to provide any proof that Sheriff Stockton did not have an oath of office on file. Second, the Defendant has provided no law showing that the absence of the oath of office by the sheriff invalidates the law enforcement authority of the deputies under him. Accordingly, the Court finds that the Defendant's supplemental argument is unsubstantiated.

### B. Officers' Conduct Not Outrageous

The Court also finds as a matter of law that the Defendant has failed to show that the actions of Detectives Kristopher and Jason Mynatt amounted to outrageous conduct that would merit the dismissal of his charges. In oral argument, counsel for the Defendant stated that the Detectives' actions in the investigation in the absence of properly sworn and filed oaths of office amounted to a crime under Tennessee law. The Defendant argued that Detective Jason Mynatt was the lead investigator in his case, because his name is on the TBI crime laboratory report and he "set up the alleged buy." [Doc. 390, Tr. at 13] The Defendant asserts that his due process rights were violated

9

because Detective Jason Mynatt was wrongfully acting under "color of law" to deprive him of his expectation of privacy. [Doc. 390, Tr. at 17]

The Government responds that no constitutional violation has occurred to warrant the dismissal of the Defendant's charges. It maintains that a confidential informant, posing as a drug customer, may make a consensual recording of a controlled purchase of drugs from the Defendant without violating the Defendant's legitimate expectation of privacy. It asserts that Detective Jason Mynatt's supervision of the confidential informant making the controlled purchase likewise does not violate the Defendant's privacy interests. The Government also argues that Investigator Kelly Jackson was equally involved in supervising the controlled purchase. Moreover, the Government contends that at a minimum, Detectives Kristopher and Jason Mynatt were *defacto* officers and acting under valid federal deputizations during this investigation. Thus, their participation in the investigation was not outrageous.

In United States v. Russell, the Supreme Court remarked on the possibility that "the conduct of law enforcement agents [could be] so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction[.]" 411 U.S. 423, 431-32 (1973). In order to block a conviction, the officers' conduct must violate fundamental fairness in a way that is "'shocking to the universal sense of justice[.]'" Id. at 432. However, the high Court found that an undercover narcotic officer's provision of a difficult to obtain ingredient for the manufacture of methamphetamine, when the defendants had previously and subsequently obtained that ingredient on their own, was "scarcely objectionable." Id. at 432. In Hampton v. U.S., the Supreme Court again acknowledged the defense articulated in Russell but held that "[t]he limitations of the Due Process Clause of the Fifth Amendment come into play only when the Government

10

activity in question violates some protected right of the Defendant." 425 U.S. 484, 490 (1976) (internal citation omitted) (plurality opn). In his concurring opinion, Justice Powell observed that "[p]olice overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction." Id. at 495 n.7. The Sixth Circuit has stated that the Russell due process defense is "rarely . . . available." United States v. Brown, 635 F.2d 1207, 1212 (6th Cir. 1980) (internal citation omitted).

"Whether outrageous government misconduct justifying dismissal on due process grounds exists . . . turns on a totality of the circumstances test." United States v. Koubriti, 435 F. Supp. 2d 666, 678 (E.D. Mich. 2006) (approving dismissal of indictment due to prosecutorial misconduct–failure to disclose exculpatory evidence–but determining that misconduct did not taint a superseding indictment with separate prosecutors). Factors relevant to the determination are whether an undercover officer or informant is involved in the crime; the type of crime under investigation; whether law enforcement instigated the criminal activity or, alternatively, infiltrated an ongoing criminal enterprise; whether the officer directs or controls the criminal activity; and the strength of the nexus between the challenged government action and the commission of the criminal acts. Brown, 635 F.2d at 1212-13.

In the instant case, nothing about the alleged failure to file or, in Detective Jason Mynatt's case, the failure to take the appropriate state oath of office implicates the officers in the crimes with which the Defendant is accused. Moreover, the Defendant points to no case in which a failure to take certain administrative, albeit legally mandated, steps relating to taking office amounted to outrageous conduct or warranted the dismissal of an indictment. Accordingly, the Court finds that Detective Jason Mynatt's failure to take the Tennessee oath of office upon becoming a Roane

11

County deputy and prior to assisting with the supervision of a controlled purchase of drugs as part of an investigation of drug trafficking did not amount to outrageous conduct. The Court thus finds no legal basis to dismiss the Defendant's charges.

## IV. CONCLUSION

After carefully considering the parties' filings and the relevant legal authorities, the Court finds no factual or legal basis for the dismissal of the charges. Accordingly, the Court **RECOMMENDS** that the Defendant's motion to dismiss [Doc. 337, as amended by 384] should be **DENIED**.[6]

                                      Respectfully submitted,

                                      s/ C. Clifford Shirley, Jr.
                                      United States Magistrate Judge

---

[6]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).